UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:11CR180 |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| vs. | ) | OPINION AND ORDER |
| MICHAEL McMICHAEL, et al. | ) | |
| DEFENDANTS. | ) | |

This matter is presently before the Court on the government's Motion to Inquire into Conflict. (Doc. No. 91.) One of defendant McMichael's attorneys, Leslie W. Jacobs, is himself a defendant in a criminal case pending before another judge on this Court. In light of this, the government, while not taking a position on the issue, has requested the Court to determine whether attorney Jacobs can properly continue to serve as counsel for McMichael. The Court held a hearing on this issue November 9, 2011.

**I. Introduction**

McMichael was indicted April 27, 2011, on one count of conspiracy to commit bribery in federally funded programs, one count of aiding and abetting Hobbs Act extortion, and one count of conspiracy to commit wire fraud and honest services fraud. McMichael has been represented by the same two attorneys throughout the pendency of this case: Leslie W. Jacobs and John R. Mitchell, both partners at the firm of Thompson Hine LLP. In addition to Jacobs and Mitchell, Matthew Ridings, an associate

attorney in Thompson Hine's Competition, Antitrust, and White Collar Crime group, as well as a multitude of support staff also work on the case.[1] On October 13, 2011, an information was instituted against attorney Jacobs alleging that he knowingly falsified his personal federal income tax returns for the years 2004 through 2007, in violation of 26 U.S.C. § 7206(1). Jacobs pleaded guilty to the information on November 2, 2011. He is scheduled to be sentenced on January 17, 2012. Meanwhile, trial of the case at bar—the case against McMichael—is scheduled to commence with jury selection on December 2, 2011 and opening statements on December 5, 2011.

In situations like this one, a court is faced with the difficult task of balancing two competing sets of interests. The court must ensure that the defendant is provided with effective assistance of counsel and must protect the integrity of the judicial system, being careful to avoid both the appearance and reality of impropriety. At the same time, the court must diligently guard the defendant's right to choose his own counsel and must avoid the appearance or reality of unwarranted interference with the attorney-client relationship. *United States v. Manuel Ramos*, 350 F. Supp. 2d 413, 415 (S.D.N.Y. 2004); *see also Serra v. Michigan Dept. of Corrections*, 4 F.3d 1348, 1352 (6th Cir. 1993) (quoting *Wheat v. United States*, 486 U.S. 153, 157 (1988)) ("When a criminal defendant seeks to be represented by retained counsel and that representation

---

[1] During a number of proceedings, Mitchell made reference to McMichael's "defense team." When asked who was on the "team," Mitchell referenced himself, Jacobs, and Ridings, as well as others (many of whom are paralegals and secretaries, according to Mitchell) for whom protective order acknowledgments have been filed. Upon reviewing the docket, it appears that nearly 40 individuals (including Mitchell, Jacobs, and Riding) are part of the "defense team." While the Court recognizes that the vast majority of the signatories are in all probability support staff, and acknowledges that Mitchell represented that the firm was likely overly inclusive in requiring so many to sign, the fact remains that, even if Jacobs were not part of the "team," McMichael's remaining counsel, Mitchell and Ridings, are part of a team that enjoys tremendous support.

may result in a conflict of interest, the district court must balance 'two Sixth Amendment rights: (1) the qualified right to be represented by counsel of one's choice, and (2) the right to a defense conducted by an attorney who is free of conflicts of interest.'").

A "District Court must recognize a presumption in favor of petitioner's counsel of choice, but that presumption may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict. The evaluation of the facts and circumstances of each case under this standard must be left primarily to the informed judgment of the trial court." *Wheat v. United States,* 486 U.S. 153, 164 (1988).

It is with this framework in mind that the Court turns to analysis of the case at bar. These attorney conflict situations are inherently difficult, as weighty interests are present on both sides. But in this case, the Court is convinced that disqualification is necessary, both to ensure that Mr. Michael receives effective assistance of counsel and to preserve the integrity of this Court and the broader federal judiciary.

**II. Analysis**

   **A. McMichael's Right to Effective Assistance**

On July 6, 2011, McMichael executed a waiver of any conflict arising out of the government's investigation of Jacobs. (Doc. No. 34.) In the waiver, McMichael affirmed his knowledge of the pending investigation of Jacobs and represented that he understood the nature of the potential conflict. In his decision on whether to execute the waiver, however, McMichael was advised by Jacobs himself.

After the information was instituted against Jacobs and after the government filed its Motion to Inquire into Conflict, McMichael executed a second waiver. This time around, McMichael retained attorney James Ervin, Jr., as independent counsel for the purpose of advising McMichael as to the propriety of agreeing to the second waiver. Both Attorney Ervin and McMichael himself have represented to the Court that Ervin has thoroughly discussed with McMichael the contents of this second waiver and that McMichael is fully aware—to the extent anyone can be—of the risks created by his decision to waive any potential conflicts relating to the separate charge against Jacobs. At this juncture, the Court has no reason to believe that McMichael's waiver of the conflict was anything short of knowing and voluntary.

But the fact that a defendant's waiver appears to be knowing and voluntary does not automatically end the Court's inquiry on this point. In *Wheat*, the Supreme Court stated that "district court[s] must be allowed substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." 486 U.S. at 163. Thus, even when a defendant's waiver is knowing and voluntary, the court may refuse to accept the waiver if it believes the conflict nevertheless runs too great a danger of inhibiting the effectiveness of a defendant's defense. The court retains this discretion because, "while the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than

4

to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Id.*

This is one of those "rare cases" referenced by the Supreme Court in *Wheat* where an actual conflict is in fact present before trial. Both McMichael and Jacobs are being prosecuted by the same United States Attorney's Office, and where both a defendant and his attorney are under investigation by the same prosecuting authority, an actual conflict is present. *United States v. McLain*, 823 F.2d 1457, 1463–64 (11th Cir. 1987) (finding actual conflict of interest between defendant and attorney where both were being investigated by the same United States Attorney's Office); *cf. Taylor v. United States*, 985 F.2d 844, 846 (6th Cir. 1993) (refusing to find an actual conflict and distinguishing the case from *McLain* because the defendant was prosecuted by federal authorities and the charges against his attorney were brought by the State).

Under these circumstances, there is a serious danger that allowing Jacobs to continue in the representation will cause severe prejudice to McMichael, McMichael's conflict waiver notwithstanding. Jacobs's pending tax fraud case impedes Jacobs's ability to provide McMichael with effective assistance. Whether Jacobs is conscious of it or not, his judgment as it relates to McMichael's case is undoubtedly impaired by the circumstances of his own tax fraud case. Evidence that McMichael's case is affecting Jacobs's conduct in Jacobs's own case has already surfaced. When questioned by this Court at the hearing on the McMichael conflict, Jacobs admitted, as reported in a *Plain Dealer* article dated November 2, 2011, (and cited below) that he was motivated to write a letter regarding his tax fraud case (a letter written to family, friends, and professional

associates that called the government's conduct in that case into question) by considerations as to how that case might affect McMichael's case. Jacobs's statement to the Court involved an instance of McMichael's case affecting Jacobs's judgment in his own tax fraud case.[2] But the incident also gives credence to the Court's concern that it will be similarly difficult for Jacobs to exercise the discretion necessary to prevent the converse—namely, allowing developments in his tax fraud case to affect his judgment in his representation of McMichael.

It is important to note that it matters little whether developments in Jacobs's tax fraud case cause Jacobs to either, on one extreme, act too timidly in his representation of McMichael in hopes of currying favor with the government in his own case or, on the other, to act too aggressively toward the government in his representation of McMichael in order to "prove" that the government's case against him will not prevent him from vigorously advocating for his client. The issue is not limited to whether the conflict might inhibit McMichael's defense by causing Jacobs to be less forceful in advocating for McMichael. Rather, the issue is whether the conflict might alter Jacobs's representation of McMichael *in any way*. Whether his pending tax fraud case influences Jacobs to be more or less forceful in his arguments against the government, the evil is still the same. Under either scenario, McMichael would be represented by counsel whose judgment was tainted by his own legal troubles.

---

[2] In the letter, Jacobs characterized his negotiations and relationship with the government as acrimonious. At the hearing, the government disputed the characterization. Although present at the hearing, Jacobs did not attempt to correct the government's version, thereby causing the Court concern as to Jacobs's ability to be objective.

Furthermore, though at this point Jacobs's sentencing is scheduled to take place more than six weeks after McMichael's trial commences, it is nevertheless possible that developments in either case might, at some point during the litigation, render it impossible for Jacobs to continue representing McMichael.[3] *See United States v. Manuel Ramos*, 350 F. Supp. 2d 413, 426 (S.D.N.Y. 2004) (fact that "[a]t some point, counsel will have to take time away from [her client's] matter to prepare intensely with her own counsel" weighed against permitting the representation to continue). The impact of such a development could be severe. Jacobs's removal from the case at a later stage of the litigation rather than now—before trial has begun—would damage the continuity of McMichael's defense. And the jury could be prejudiced against McMichael if Jacobs were forced to withdraw mid-trial.

### B. The Court's and the Public's Overriding Interest in the Integrity of the Judiciary Generally and of These Proceedings Specifically

In addition to concerns regarding the propriety of the waiver as it relates to McMichael's right to effective assistance of counsel, the Court's and the public's interest in preserving the integrity of the proceedings and in the proper administration of justice are of great importance in determining whether disqualification of an attorney is

---

[3] Along these lines (and as discussed below in a different context) Local Criminal Rule 57.7(e)(1) provides that, where an attorney admitted to practice before this Court "enters a plea of guilty" to a "serious crime" (which term includes tax fraud), "the Chief Judge, on behalf of this Court, shall *immediately* enter an order of interim suspension of that attorney . . . ." (Emphasis added.) The Chief Judge has yet to enter such an order suspending Jacobs, but the imminent possibility that such an order will issue hangs like a sword of Damocles over these proceedings. Independent of the decision announced in this opinion, the Chief Judge could at any time—including in the midst of McMichael's trial—suspend Jacobs. After the Chief Judge issues such an order, the full Court may, in the interest of justice, elect to lift the interim suspension, but it is by no means clear that the Court would so-elect here. Thus, even this possibility compounds the uncertain nature of Jacobs's continuing availability to represent McMichael before this Court.

appropriate. *United States v. Swafford*, 512 F.3d 833, 839 (6th Cir. 2008) (While a "defendant enjoys a presumption in favor of counsel of choice, . . . such a presumption may be overcome because such a choice must be balanced with the *court's* interest in the integrity of the proceedings and the *public's* interest in the proper administration of justice."); *see also In re Paradyne Corp.*, 803 F.2d 604, 611 n.16 (11th Cir. 1986) (internal citations and quotation omitted) ("The right to counsel of one's choice . . . does not override the broader societal interests in the effective administration of justice or in the maintenance of public confidence in the integrity of our legal system."). In fact, these "integrity interests" are the foundation upon which a court's inherent power of disqualification rests. *See In re BellSouth Corp.*, 334 F.3d 941, 951 (11th Cir. 2003) ("A court's inherent power to disqualify an attorney . . . is rooted in concern for the integrity of the judiciary and the public's perception thereof."). As such, "[f]ederal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Wheat*, 486 U.S. at 160; *see also United States v. Almany*, 621 F. Supp. 2d 561, 576 (E.D. Tenn. 2008) ("The Court is charged with maintaining the public confidence in the legal system and preserving a defendant's ability to have the utmost confidence in his attorney's loyalty and discretion.").

With this duty in mind, it is of great significance to the Court that Jacobs is no longer a mere criminal defendant entitled to the presumption of innocence. Rather, he is now an *admitted felon*. Precedent exists for allowing, in certain circumstances, attorneys *charged* with criminal conduct to continue representing a client despite the

danger of conflict. But the Court is unaware of a single reported case wherein a court has permitted a conflicted attorney who has pleaded guilty to a felony in a case pending against him to continue representing a client in another case. Allowing such an individual to practice before this Court would seriously impugn the integrity of these proceedings and would sully the public's perception of the integrity of the federal judiciary.

Local Criminal Rule 57.7(e)(1) is evidence of the gravity with which our Court views situations such as this one. The rule requires that, when an attorney admitted to practice before this Court "enters a plea of guilty" to a "serious crime" (which term includes tax fraud), "the Chief Judge, on behalf of this Court, shall immediately enter an order of interim suspension of that attorney . . . ." That our Court has chosen to enact this rule indicates that our Court both (1) makes a clear distinction between attorneys charged with a serious crime and those who have pleaded guilty to such a crime, and (2) believes that permitting a lawyer who has admitted to such a crime to appear in proceedings before this Court could call the integrity of those proceedings into question.

The Court must also consider the nature of Jacobs's crime. Jacobs has admitted to committing a crime of dishonesty, acknowledging that he has "made false statements concerning the items for which he claimed inflated deductions" on his tax returns. (Jacobs's Plea Agreement ¶ 28.) More so than with attorneys who have admitted to other types of offenses, allowing Jacobs to serve *as an officer of this Court* would threaten to undermine both the integrity of these proceedings and the integrity of the Court as a whole. In order for the judicial system to function properly, both the Court and the public must have confidence that, while faithfully representing their clients, attorneys

9

serving as officers of the Court also maintain an unwavering commitment to honest conduct. This Court's Local Rules, the American Bar Association's Model Rules of Professional Conduct, and other sources governing the conduct of lawyers and of judicial proceedings, indicate that conduct involving dishonesty is a most serious infringement of a lawyer's professional duties. *See, e.g.,* Local Criminal Rule 57.7(e)(3) (identifying "serious crime[s]" that lead to automatic suspension as all felonies and any lesser crime involving "false swearing, misrepresentation, fraud, tax evasion, willful failure to file income tax returns, deceit, bribery, extortion, misappropriation, [or] theft"); ABA Model Rule of Professional Conduct 8.4 ("It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation."); Ohio Rule of Professional Conduct 8.4 (same). This is no doubt due in large part to the effect such conduct has on the integrity of the legal system as a whole and on any specific proceedings that may be involved. To make matters worse, McMichael is himself charged with crimes of dishonesty.

That this is a relatively high-profile case also weighs against allowing Jacobs to continue his representation of McMichael. McMichael's prosecution is one of a number of prosecutions stemming from a multi-year federal investigation of public corruption in Cuyahoga County. The broader investigation and resultant criminal cases have been—to say the least—well publicized in local media. Regarding the specific issue currently before the Court, at least two articles discussing the case against Jacobs and his role in representing McMichael have been published by Cleveland's *Plain Dealer*.  *See* James F. McCarty, *Cleveland Lawyer Leslie 'Les' Jacobs Pleads Guilty to Federal Tax*

10

*Charge*, THE PLAIN DEALER, Nov. 2, 2011, http://blog.cleveland.com/metro/2011/11/cleveland_lawyer_leslie_les_ja.html; James F. McCarty, *Cleveland Attorney Les Jacobs Charged with Tax Fraud*, THE PLAIN DEALER, Oct. 13, 2011, http://blog.cleveland.com/metro/2011/10/federal_prosecutors_charge_pro.html. In such cases of heightened public interest, it is especially incumbent upon a court to ensure that both the reality and appearance of fairness are preserved. *See Manuel Ramos*, 350 F. Supp. at 426 (that the case was "highly public" was a factor that weighed against allowing an indicted attorney to continue representation of the defendant). In a community already grappling with the fallout of widespread public corruption, permitting an admitted felon—one who has recently pleaded guilty to a crime of dishonesty and stands to be sentenced—to represent an individual alleged to be involved in that corruption would further shake what remains of the public's confidence in government institutions.

The Court has given great weight to the presumption that McMichael is entitled to the counsel of his choice and to the voluntary nature of his conflict waiver. But in the interest of ensuring both that McMichael receives the effective counsel to which he is entitled and that the integrity of the federal judiciary is preserved, the Court is impelled to disqualify Jacobs from further representation of McMichael in this case.

### C. Additional Considerations

Though convinced that the interests of justice require disqualification of Jacobs, the Court deeply regrets that it must act against the wishes of defendant McMichael. The attorney-client relationship between Jacobs and McMichael stretches

11

back three years. Further, it is clear to the Court that McMichael has placed considerable personal trust in Jacobs. But the Court notes that attorney Mitchell has also, like Jacobs, been on this case from the beginning. Mitchell is an experienced partner in the Competition, Antitrust, and White Collar Crime group at Thompson Hine. He has been practicing law for 15 years. In both his time at Thompson Hine and as an assistant county prosecutor, he has tried approximately 80 cases. He will be assisted by Ridings, who is also part of the defense team. With Mitchell and Ridings at his side, therefore, McMichael will by no means be left starting from scratch in terms of building his defense. Rather, he will still be represented by counsel well-versed in both this area of law generally and in the specifics of McMichael's case.[4]

One other issue as to the propriety of disqualifying Jacobs from this case warrants discussion. McMichael and his team have been aware for some time of the possibility that Jacobs could be disqualified from this case. The initial audit letter was sent to Jacobs on February 4, 2008, and his initial meeting with the auditors occurred on February 28, 2008. The matter became a criminal investigation in July of 2009 and was referred to the U.S. Attorney's office in the late summer or early fall of 2010. McMichael

---

[4] In addition, this ruling goes only to the disqualification of Jacobs from appearing before this Court on McMichael's behalf. So long as Jacobs's law license is not suspended by the Supreme Court of Ohio, this Court cannot prevent him from working on this case alongside Mitchell, Ridings, and McMichael himself in, among other things, reviewing evidence, preparing witnesses, and helping plan trial strategy. Such an arrangement would allow McMichael, if he desired, to still utilize Jacobs's services. Disqualifying Jacobs from representation in Court ensures that McMichael's defense will not be reliant on the snap in-courtroom judgments of a conflicted attorney. If Jacobs does participate in this more limited capacity, all advice given by Jacobs would pass through Mitchell and Ridings, who would be able to act as a filter between Jacobs and the Court, weighing with their own unconflicted judgment any recommendations made by Jacobs and making the final determination as to what would be presented at trial. Moreover, under such a scenario, Jacobs's limited role would remain unknown to the jury and thus, there would be no danger that the jury might be biased against McMichael should Jacobs be forced to cease participation mid-trial or should the jury learn of Jacob's plea and impending sentence.

did not retain Thompson Hine until October 28, 2008 (after Jacobs's troubles first surfaced) and, as noted previously, was not indicted until April 27, 2011. The information was instituted against Jacobs in his tax fraud case on October 12, 2011, and the date of Jacobs's arraignment was originally set as December 12, 2011. In response to a motion (Case No. 11CR469, Doc. No. 3) by the government citing "serious problems [that] may result from the two-month lag time from the filing of the Information . . . to the presently-scheduled [arraignment]," the district judge assigned to that case ordered the rescheduling of the arraignment to an earlier date. The arraignment was thus held—and Jacobs pleaded guilty—on November 2, 2011.

With opening statements in McMichael's trial scheduled to begin December 5, 2011, McMichael himself was understandably concerned as to the timing of these events and voiced that concern at the November 9th hearing. At that hearing, the government addressed the situation, explaining that its motion to expedite Jacobs's arraignment was based only on statute of limitations concerns.

Specifically, the government represented that the statute of limitations in Jacobs's tax fraud case was "starting to run in September of 2011." During plea negotiations in Jacobs's case, Jacobs executed a waiver of the statute of limitations, but that waiver extended the deadline only through December 2011. Even though plea negotiations began in the summer, the government further represented that, because of delays caused by Jacobs, that process had been extended for approximately two months longer than originally anticipated. Given Jacobs's purported delay tactics, and considering that the arraignment was not going to be held until December 12, 2011, the

government was very concerned that, should Jacobs decide not to enter a plea of guilty to the information, it would not be able to obtain a grand jury indictment before Jacobs's waiver of the statute of limitations expired. It was with this in mind that the government moved for (and was granted) an earlier arraignment date.[5]

That said, at the status conference held October 28, 2011, cognizant of the very real possibility that Jacobs might be disqualified from representing McMichael or suspended by local rule from practicing before this Court, the Court directed Mitchell to continue to prepare for trial with the understanding that Jacobs may not be able to participate. Mitchell indicated that it was a contingency of which he was aware. Mitchell reconfirmed to the Court at the November 9th hearing that he has indeed been preparing for that contingency and that the Thompson Hine associate who has been assigned to the case was also preparing for a courtroom role.

**III. Conclusion**

The presumption in favor of allowing a defendant to keep his chosen counsel and the knowing and voluntary nature of the conflict waiver executed by McMichael combine to give the Court pause in making any decision to disqualify Jacobs's from further representation of McMichael. But "[w]hether [a] client waives his right to conflict-free representation is not dispositive" and while a "defendant enjoys a presumption in favor of counsel of choice, . . . such a presumption may be overcome

---

[5] Even if the arraignment date had not been advanced, disqualification of Jacobs from a timing perspective would have still been warranted, as there is no guarantee that McMichael's trial will be completed by December 12.

because such a choice must be balanced with the *court's* interest in the integrity of the proceedings and the *public's* interest in the proper administration of justice." *United States v. Swafford*, 512 F.3d 833, 839 (6th Cir. 2008) (emphasis added) (internal quotation omitted). It is this concern for the integrity of these proceedings and the integrity of the larger Court and legal system, coupled with concerns about Jacobs's ability to effectively represent McMichael, that impels the Court to disqualify Jacobs from further representation of McMichael in this case. The Court has come reluctantly, but firmly, to this decision.

    **IT IS SO ORDERED**.

Dated: November 14, 2011                  _____
                              **HONORABLE SARA LIOI**
                              **UNITED STATES DISTRICT JUDGE**