**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.1:11CR180 |
| | ) | |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | OPINION  AND ORDER |
| | ) | |
| | ) | |
| GEORGE A. PHILLIPS, et al., | ) | |
| | ) | |
| | ) | |
| DEFENDANTS. | ) | |

Before the Court are a series of motions in limine filed by the government and the defendants, George A. Phillips and Michael McMichael. (*See* Doc. Nos. 110-117.) These motions are fully briefed, and the Court conducted a motion hearing on November 29, 2011. Following the hearing, the Court permitted the parties to file additional materials for consideration in resolving the pending motions.

*Background*

On April 27, 2011, the government filed a five-count indictment against defendant McMichael and defendant Phillips. The indictment was one in a string of indictments and informations growing out of an expansive federal investigation, conducted over a number of years, into allegations of public corruption and conspiracy in Cuyahoga County, Ohio. By this charging document, the government alleged that defendant Phillips, who was, at all times relevant to the indictment, the executive director of the Cuyahoga Metropolitan Housing Authority (CMHA), conspired with defendant

McMichael, William Neiheiser, and others to steer federal funds slated for public housing improvement projects toward the businesses associated with McMichael and Neiheiser.[1] To this end, Phillips and McMichael were charged with conspiracy to commit bribery in federally funded programs, in violation of 18 U.S.C. § 371, conspiracy to commit wire fraud and honest services wire fraud, 18 U.S.C. §§ 1343 and 1346, in violation of 18 U.S.C. § 1349, and Hobbs Act violations, 18 U.S.C. §§ 1951 and 2. Defendant Phillips was also charged with one count of bribery concerning programs receiving federal funds, in violation of 18 U.S.C. §§ 666(a)(1)(B) and (2), and making false statements to law enforcement, in violation of 18 U.S.C. § 1001.

*Legal Standards*

### Motion in Limine Standard

Although not explicitly authorized by the Federal Rules of Evidence or the Federal Rules of Criminal Procedure, the practice of ruling on motions in limine "has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). Motions in limine allow the court to rule on evidentiary issues prior to trial in order to avoid delay and focus pertinent issues for the jury's consideration. *See United States v. Brawner*, 173 F.3d 966, 970 (6th Cir. 1999); *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997).

---

[1] The indictment provides that defendant McMichael was "an employee of Business 31, which was an international provider of building control, energy management, fire safety and security system products and solutions." (Indictment at ¶ 5.) "Business 31" is Siemens Building Technology. Neiheiser, who is identified in the indictment as an unindicted co-conspirator, was "president and chief executive officer of Reliance Mechanical ('Reliance'), a heating, air conditioning, and plumbing contracting company located in Cleveland, Ohio." (*Id.* at ¶ 6.)

Courts should exclude evidence on a motion in limine only when it is clearly inadmissible. *Indiana Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004). If the court is unable to determine whether or not certain evidence is clearly inadmissible, it should defer ruling until trial so that questions of foundation, relevancy, and potential prejudice can be evaluated in proper context. *Id.* Ultimately, the determination whether to grant or deny a motion in limine is within the sound discretion of the trial court. *Goldman v. Healthcare Mgmt. Sys., Inc.*, 559 F. Supp. 2d 853, 858 (W.D. Mich. 2008) (citing *United States v. Certain Lands Situated in the City of Detroit*, 547 F. Supp. 680, 681 (E.D. Mich. 1982)). In limine rulings are preliminary, and the district court may change its ruling at trial for any reason it deems appropriate. *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994).

### Federal Rules of Evidence

All relevant evidence is admissible and evidence that is not relevant is not admissible. Fed. R. Evid. 402. "Relevant evidence" is defined as "evidence having any tendency to make the existence of any fact of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. The relevancy standard is liberal. *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 587 (1993). However, relevant evidence may be excluded if its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of the evidence." Fed. R. Evid. 403.

3

*Analysis*

### Defendants' Motions in Limine

<u>Defendants' Joint Motion to Exclude "Other Acts" Evidence</u>

By their joint motion, defendants seek to preclude the government from offering "other acts" evidence to show that they are inherently bad actors. Specifically, they request an order prohibiting the government from offering evidence as to their association with Michael Forlani and William Neiheiser and the charges against these individuals. Defendants also believe that the government should be precluded from offering evidence of other alleged criminal acts of the defendants that have not been charged. The government responds by stating that it "shall give reasonable notice in advance of trial of the general nature of any 404(b) evidence it intends to introduce at trial." It further insists that "[a]ny association of Defendants with William Neiheiser and/or Michael Forlani will not be 404(b) evidence to show other crimes, wrongs, or acts of Defendants but relate to an association relative to the conspiracy in this indictment." (Response at 1-2.)

Rule 404(b) states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

4

Fed. R. Crim. P. 404(b).

At the motion hearing, the government indicated that it had not given any advanced notice relative to Rule 404(b), and that it did not intend to use "other acts" evidence at trial. Given this representation, the Court finds that this motion is moot. Should the government find a need to offer such evidence at trial, it is directed to raise the issue outside the hearing of the jury so that the defendants may respond before the Court rules on the admissibility of any evidence. Defendants' joint motion is, therefore, denied as moot.

Defendants' Joint Motion to Exclude Evidence of Uncharged Ethical Violations

Defendants contend that the government should be precluded from offering evidence relating to ethical rules that apply to public officials and, in particular, ethical rules that prohibit public officials from receiving "things of value" in exchange for the performance of official acts. The government represents that it does not intend to offer evidence of the ethical rules of the Cuyahoga Metropolitan Housing Authority ("CMHA") or the ethical rules of Siemens Building Technology in its case-in-chief. Instead, it will only seek to offer such evidence if the defendants open the door by offering evidence or argument that they are "ethical or of good character." (Response at 1.).

The defendants cite to the Court's decision in *United States v. Terry*, 2011 U.S. Dist. LEXIS 57820 (N.D. Ohio May 31, 2011) for the proposition that evidence of such ethical rules are irrelevant in fraud cases. While *Terry* is instructive, the defendants

5

overstate the Court's ruling. In *Terry*, a sitting state court judge was charged with conspiracy, mail fraud and honest services mail fraud. The governments sought to introduce evidence of the Ohio Code of Judicial Conduct to establish that the defendant's practice of engaging in ex parte communications was unethical. The Court denied the admission of the evidence in the government's case-in-chief not because it was irrelevant, but rather because the "[a]dmission of such evidence [ran] the risk that the defendant would be convicted for violating ethical rules, instead of engaging in a bribery scheme that utilized the federal mail system."[2] (*Id.* at *10.)

Likewise here, the fact that the CMHA governing rules may prohibit public officials from receiving things of value in exchange for the awarding of contracts, and that Siemens has presumably adopted internal ethical rules that prohibit the offering of things of value to public officials for preferable treatment, and the defendants were aware of these rules, is at least some evidence of the defendants' intent to defraud or knowledge of the impropriety of such conduct. In any event, the Court need not further address the issue at this time as the government has represented that it does not intend to introduce such evidence unless the defendants open the door.

Thus, the defendants' motion to exclude evidence of the ethical codes of the CMHA and Siemens from the government's case-in-chief, to the extent that it is not already moot, is granted. Of course, the conduct underlying these alleged ethical violations is admissible to prove the elements of the charged offenses. Moreover, if the

---

[2] In fact, the Court held: "[t]hat the Ohio Supreme Court promulgated rules prohibiting judges, except in limited circumstances, from having ex parte communications with parties and non-parties, and the defendant knew of the judicial code and allegedly engaged in such communications, is at least some evidence of the defendant's intent to defraud. Thus, it has probative value." (*Id.* at *8.)

defendants offer evidence that their actions were ethical or that they are of ethical character, or potentially if they argue that they were unaware that bribing public officials is unlawful, this may, depending on the nature of the evidence, open the door to evidence of the various ethical codes.[3]

### Defendants' Joint Motion to Exclude Uncharged Intercepted Calls

Defendants anticipate that the government will attempt to offer evidence of various intercepted wire communications in support of Count IV, conspiracy to commit wire fraud and honest services wire fraud, 18 U.S.C. § 1349. The indictment identifies two intercepted calls, which are set forth in the indictment as supporting the conspiracy charge. Specifically, Count IV provides, in relevant part:

### EXECUTION OF THE SCHEME

29. On or about the dates listed below, in the Northern District of Ohio and elsewhere, PHILLIPS, MCMICHAEL, Neiheiser and others, for the purpose of executing the above-described scheme and artifice, caused to be transmitted by means of wire communication, in interstate commerce, writings, signs, signals, pictures, and sounds, *including the following*:

(Indictment at ¶ 29, emphasis added.) It then identifies two calls placed in 2008.

Defendants begin by noting that there is a split in the circuits as to whether proof of an overt act is required under § 1349, but insist that the Sixth Circuit has "implied" that an overt act is required under the statute.[4] They further insist that the two

---

[3] In fact, in *Terry*, the defendant opened the door to evidence of the judicial code when he testified to the process by which he made the judicial decisions that formed the basis for the fraud charges, including his reliance upon other portions of the judicial code.

[4] In support of this conclusion, the defendants cite *United States v. Crosgrove*, 637 F.3d 646, 651 (6th Cir. 2011), wherein the Sixth Circuit merely observed that the indictment returned against the defendant listed overt acts in furtherance of a mail fraud conspiracy charge.

calls identified in Count IV are "overt acts" and that evidence of other calls in support of this count would result in an unlawful variance of the indictment returned by the grand jury.

It is the government's position that it need not plead or prove an "overt act" under § 1349 and, consistent with that position, contends that it did not plead *any* overt acts in Count IV.[5] Nonetheless, the Court need not reach the question of whether overt acts are required under § 1349, as this is not the question before it. This is a motion in limine, and the only issue before this Court is whether evidence of other calls would constitute a variance of the indictment

Even if the Court were to assume that Count IV required overt acts, "the inclusion of an overt act in an indictment does not preclude the Government from proving other overt acts so long as they are in furtherance of the conspiracy, and there is no prejudice [to] the Defendant." *United States v. Abdi*, 498 F. Supp. 2d 1048, 1083 (S.D. Ohio 2007); *see United States v. Stone*, 323 F. Supp. 2d 886, 893 (E.D. Tenn. 2004), *sentence vacated and remanded for resentencing on other grounds*, 432 F.3d 651 (6th Cir. 2005) (collecting cases and noting that "[b]rief excerpts from decisions of other circuits demonstrate the wide acceptance of permitting proof of unalleged overt acts committed in furtherance of a conspiracy to be considered by a jury")).

---

[5] Such a position is consistent with the differences in the language used to charge Count I and Count IV. In Count I, charging conspiracy to commit bribery in federally funded programs, 18 U.S.C. § 371, the indictment includes a section headed with the words "OVERT ACTS."  (Indictment at ¶ 16.) It then lists numerous actions, but does not have qualifying language that would suggest that the enumerated actions are part of a non-exhaustive list. In contrast, as previously mentioned, Count IV contains no heading for overt acts but, instead, has a heading entitled "EXECUTION OF THE SCHEME," under which two calls are identified from what clearly appears to be a non-exhaustive list.

Nor does the Court find that inclusion of other recorded conversations that took place within the conspiracy period would vary the indictment returned by the grand jury. "A variance occurs when 'the charging terms [of the indictment] are unchanged, but the evidence at trial proves facts materially different from those alleged in the indictment.'" *United States v. Hathaway*, 798 F.2d 902, 910 (6th Cir. 1986) (quoting *United States v. Castro*, 776 F.2d 118, 1121 (3d Cir. 1985); *see United States v. Combs*, 369 F.3d 925, 935-936 (6th Cir. 2004)). "In contrast, an amendment involves a change, whether literal or in effect, in the terms of the indictment." *United States v. Beeler*, 587 F.2d 340, 342 (6th Cir. 1978); *see United States v. Barrow*, 118 F.3d 482, 488 (6th Cir. 1997). A third category, referred to as a "constructive amendment," "falls somewhere between an actual amendment and a variance." *Barrow*, 118 F.3d at 488. The Sixth Circuit provides that a variance rises to the level of a constructive amendment:

> when the terms of an indictment are in effect altered by the presentation of evidence and jury instructions which so modify essential elements of the offense charged that there is a substantial likelihood that the defendant may have been convicted of an offense other than that charged in the indictment.

*Hathaway*, 798 F.2d at 910. Defendants claim that evidence of other calls would constitute a variance of Count IV. The Court disagrees.

In *United States v. Hynes*, 467 F.3d 951 (6th Cir. 2006), the Sixth Circuit considered the impact of the admission of evidence of a fraudulent transaction that was not enumerated as one of the "overt acts" that was listed in the indictment for the charge of conspiracy to commit money laundering. The court rejected the defendant's argument that the evidence constituted a constructive amendment, noting that the indictment "neither stated nor implied that the overt acts included in the indictment comprised an

9

exhaustive list" and that the other act fell within the conspiracy period.[6] *Id.* at 163-164. Turning to the question of variance, the court noted that "[a] variance requires reversal of a conviction 'only when a defendant shows prejudice to his ability to defend himself at trial, to the general fairness of the trial, or to the indictment's sufficiency to bar subsequent prosecutions.'" *Id.* (quoting *Barrow*, 118 F.3d at 488-489). The court found that the defendant met none of these factors, noting that he had the opportunity to cross examine the agent that presented the evidence and respond to the government's arguments in closing statements, and that he was not in jeopardy of being twice tried for the same crime.[7] *Hynes*, 467 F.3d at 964; *see United States v. Rashid*, 274 F.3d 407, 414-415 (6th Cir. 2001) (discrepancy between the indictment and the proof did not result in a variance or a constructive amendment because the language of the indictment suggested that it was not all-inclusive and the transaction occurred during the period of the conspiracy).

Here, the language contained in Count IV, "including the following," clearly implies that the calls which follow do not comprise an exhaustive list. Thus, so long as the other contemplated calls fall within the conspiracy and are in furtherance of

---

[6] In fact, the language in the indictment in *Hynes*, that "one or more of the conspirators committed the following overt acts," 467 F.3d at 963, was much narrower than the language of the present indictment which alleges that the co-conspirators engaged in actions "including the following[]." *See United States v. Rashid*, 274 F.3d 407, 414-415 (6th Cir. 2001) (cited by *Hynes* and noting that the admission of an additional fraudulent transaction did not create a variance or a constructive amendment where "including but not limited to" language suggested that the acts identified were not all-inclusive).

[7] In reaching its conclusion, the court also relied upon *United States v. Prince*, 214 F.3d 740 (6th Cir. 2000), another money laundering case, where the government introduced testimony that the defendants had carried out certain fraudulent transactions both to conceal the source of the funds and to avoid transaction-reporting requirements. While the indictment merely pled the first object (to conceal the source of the funds), the court refused to find a constructive amendment because the additional evidence and the instructions did not constitute a new crime but merely an alternative method of proving the charged crime. *Id.* at 753-756. Similarly here, evidence of other calls could be considered an alternative method of proving the offense charged in Count IV. *See Hynes*, 467 F.3d at 96.

said conspiracy, there would not appear to be a risk that the proof of other calls would rise to the level of a constructive amendment.[8] Moreover, since the defendants would have the opportunity to test the evidence of other calls at trial, it is unlikely that any variance between the indictment and the proof would require reversal of a conviction.[9] Defendants' motion to exclude evidence of uncharged calls in support of Count IV is denied.

### Defendant McMichael's Motion to Exclude Reference to Adult Entertainment

Defendant McMichael challenges the government's right to offer evidence that Neiheiser arranged for Phillips and McMichael to receive massages during a golf outing as evidence of a "thing of value" received by Phillips. He notes that there are no allegations in the indictment that McMichael received a "thing of value" and such evidence, as against him, would merely taint his character.

The Court finds that evidence that McMichael may have received massages and other forms of adult entertainment from Neiheiser does not constitute

---

[8] The Court notes that it is constrained in anticipating the existence of a constructive amendment in that constructive amendments, unlike variances, require the consideration of both the evidence and the jury instructions. *See Hynes*, 467 F.3d at 962 ("a defendant can prove a constructive amendment only by pointing to a combination of evidence *and* jury instructions […]"). While the Court does not even know what exactly the evidence will on this subject, it has not yet prepared the jury instructions. Indeed, both concepts, variances and amendments, generally come into play on appeal, looking *back* at the evidence presented at trial. In this in limine motion, the Court is called upon to consider whether this evidence will likely result in a variance or a constructive amendment.

[9] In *Hynes*, the court further observed that "evidence of an additional act not alleged in the indictment would help the government satisfy its burden of proof only if the government actually had to prove that one of the conspirators committed an overt act. But it did not, as the Supreme Court unanimously confirmed in 2005." *Id.* (citing *Whitfield v. United States*, 543 U.S. 209, 211 (2005) (holding that a conviction for conspiracy to launder money under 18 U.S.C. § 1956(h) does not require proof of an overt act). Assuming that § 1349 does not require evidence of an overt act, as the government suggests, this would serve as an additional reason why no variance or constructive amendment could result from the admission of other calls in support of Count IV.

impermissible "other acts" evidence under Rule 404(b) for two reasons. First, it is evidence of the charged offense of conspiracy. Rule 404(b) applies only to "other crimes, wrongs, or acts." Fed. R. Evid. 404(b). Where the defendant is charged with conspiracy, evidence of the existence of the conspiracy is not evidence of other crimes, wrongs, or acts; it is evidence of the charged offense of conspiracy. *See United States v. Williams*, 612 F.3d 417, 423 (6th Cir. 2010). Count I of the indictment, charging the defendants with conspiracy to commit bribery in federally funded programs, alleges that:

> It was a further object of the conspiracy that Neiheiser, Reliance and others, *with the help and encouragement of MCMICHAEL* and others, corruptly gave, offered and agreed to give things of value to PHILLIPS, acting with the intent to influence and reward PHILLIPS in connection with the business, transaction and series of transactions involving CMHA described in paragraph 14 above.

(Indictment at ¶ 15, emphasis added.) It is the government's theory that McMichael accepted the adult entertainment from Neiheiser in order to encourage Phillips to do the same. Because the evidence goes to establishing the existence of the conspiracy and McMichael's participation therein, it is relevant under Rule 401.[10]

Second, even if this evidence could constitute "other acts," it would still be admissible under Rule 404(b) because it is "intrinsic." "Background" evidence, often referred to as "res gestae," does not implicate Rule 404(b). *United States v. Hardy*, 228

---

[10] McMichael's reliance on *United States v. McFadyen-Snider*, 552 F.2d 1178 (6th Cir. 1977), wherein the Sixth Circuit quoted *United States v. Cox*, 536 F.2d 65, 71 (5th Cir. 1976): "Evidence of illicit sexual activities is totally immaterial to the credibility or character traits involved in most criminal cases" is misplaced. In *McFadyen-Snider*, the Sixth Circuit reversed the defendant's conviction for mail fraud and making false financial statements because the government introduced unrelated evidence that the defendant had once engaged in prostitution. The court observed that the language in *Cox* questioning the admission of illicit sexual activities was "especially true where the conduct does not involve a substantive issue of the case, *United State v. Cox, id*, and would serve only to unduly harass the defendant." *Id. McFadyen-Snider* is, therefore, entirely distinguishable on the facts because, here, the evidence in question goes to a "substantive issue of the case."

F.3d 745 (6th Cir. 2000) (citing 2 Jack B. Weinstein, Margaret A. Berger & Joseph M.
McLaughlin, Weinstein's Federal Evidence, § 404.20[2][c])). Crimes or other wrongs
that are unrelated to the charged offenses are considered "extrinsic," and are generally not
admissible, except under limited circumstances. Intrinsic acts, or those "inextricable
intertwined" with the crime charged, *see United States v. Everett*, 270 F.3d 986, 992 (6th
Cir. 2001), or are "part of a single criminal episode," however, are admissible and beyond
the reach of Rule 404(b). *United States v. Barnes*, 49 F.3d 1144, 1149 (6th Cir. 1995). As
the Sixth Circuit explained:

> Proper background evidence has a causal, temporal or spatial connection
> with the charged offense. Typically, such evidence is a prelude to the
> charged offense, is directly probative of the charged offense, arises from
> the same events as the charged offense, forms an integral part of a
> witness's testimony, or completes the story of the charged offense.

*Hardy*, 228 F.3d at 748 (citation omitted).

Here, evidence that McMichael may have accepted adult entertainment
from Neiheiser is inextricably intertwined with evidence that Phillips may have followed
suit as both acts were part of an alleged "single criminal episode" or involved an alleged
"continuing pattern of illegal activity." *Barnes*, 49 F.3d at 1149 (quoting *Hardy*, 228 F.3d
at 748); *see, e.g., United States v. Marrero*, 651 F.3d 453, 470-471 (6th Cir. 2011)
(Evidence that the defendant struggled with police at the time of his arrest was
inextricably intertwined in that it had "a temporal connection to, and completes the story
of, the charged drug offenses."); *United States v. Cornell*, 162 Fed. Appx. 404, 410-411
(6th Cir. 2006) (evidence of defendant's possession of a firearm was inextricably
intertwined with evidence of his involvement in a drug conspiracy). The temporal
proximity of defendant McMichael's actions, and the fact that they arise out of the same

events as the charged offenses and complete the story thereof, render them inextricably intertwined.

Nor can the Court find that the probative value of such evidence would be substantially outweighed by its risk of having an unfairly prejudicial effect. Fed. R. Evid. 403. "Evidence is not unfairly prejudicial simply because it provides more support for a conclusion that the defendant committed the crime. It is unfairly prejudicial if it serves to 'inflame the passions of the jury' and causes them to ignore the evidence." *United States v. Daulton*, 266 Fed. App. 381, 385 (6th Cir. 2008) (quoting *United States v. Whittington*, 455 F.3d 736, 739-740 (6th Cir. 2006)). In other words, "evidence that is prejudicial only in the sense that it paints the defendant in a bad light is not unfairly prejudicial pursuant to Rule 403." *See United States v. Logan*, 250 F.3d 350, 368-369 (6th Cir. 2001) (internal citation and quotation omitted). That his alleged activities may paint McMichael in a bad light, alone, is an insufficient reason to exclude such evidence when it is so closely linked to the alleged conspiracy.[11] Additionally, should McMichael desire it, the Court would be willing to give a proper limiting instruction advising the jury as to how this evidence may (and may not) be considered in their deliberations. Accordingly, Defendant McMichael's motion to exclude such evidence is denied.

---

[11] Further, the Court notes that it has reviewed the evidence in question and sees no way to extricate the challenged evidence from that which will be offered against defendant Phillips, and defendant McMichael has failed to offer any suggestions for doing so. Of course, the fact that there is no workable way to sanitize the evidence merely provides further support for the Court's finding that the evidence in question is inextricably intertwined with evidence that defendant Phillips may have received "things of value" in exchange for official acts.

14

<u>Defendant McMichael's Motion to Exclude Evidence of Forlani/Doan</u>

Defendant McMichael argues that any evidence of the activity of Michael Forlani or those involved in Forlani's company, Doan Pyramid, should be excluded because such evidence is irrelevant to the present indictment. By way of illustration, McMichael points the Court to a golf outing in 2008, and notes that it occurred outside of the conspiracy period identified in the indictment and is unrelated to the CMHA project. He further argues that, even if it was relevant, exclusion of such evidence would be appropriate under Rule 403 because the recently filed criminal case against Michael Forlani also before this Court, *see* Case No. 1:11CR491, has received significant recent press coverage and resulting prejudice to McMichael was likely.

The government notes that Michael Forlani is a named co-conspirator in Count I and an unnamed co-conspirator in Count IV, such that "the United States will necessarily refer to Forlani and his company Doan Pyramid (Business 14)." (Response at 1.) Notwithstanding these general anticipated references to Forlani and Doan Pyramid, the government represented at the motion hearing that it will not offer evidence as to the charges against Mr. Forlani or "other dealings" involving Forlani, including the 2008 golf outing mentioned in the motion, unless the defendants open the door to such testimony. Consequently, the Court finds that the motion is moot and it is denied as such.

<u>Defendants' Joint Motion to Enforce the Rule of Completeness</u>

Defendants move to require the government to play the entirety of any recording offered at trial. Rule 106, which partially codified the common law "rule of completeness," provides that "[w]hen a writing or recorded statement or part thereof is

15

introduced by a party, an adverse party may require the introduction at the time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." Fed. R. Evid. 106. The Advisory Committee Notes explain that the purpose of the rule is to avoid a "misleading impression created by taking matters out of context." *Id.* (Advisory Committee Notes); *see United States v. Holden*, 557 F.3d 698, 706 (6th Cir. 2009) (the "purpose of the rule of completeness is to ensure fairness in the presentation of evidence at trial"); *see also United States v. Howard*, 216 Fed. Appx. 463, 472-73 (6th Cir. 2007) (quoting *United States v. Costner*, 684 F.2d 370, 373 (6th Cir. 1982) (Rule 106 "allows a party who is prejudiced by an opponent's introduction of part of a 'document, or a correspondence, or a conversation,' to enter so much of the remainder as necessary to explain or rebut a misleading impression caused by the incomplete character of that evidence.")).

However, "the doctrine [of completeness] 'does not make inadmissible evidence admissible.'" *United States v. Cosgrove*, 637 F.3d 646, 661 (6th Cir. 2011) (quoting *Howard*, 216 Fed. Appx. at 472-73) (internal citations omitted); s*ee Trepel v. Roadway Express Inc.,* 194 F.3d 708, 718 (6th Cir. 1999); *Costner*, 684 F.2d at 373 ("The rule covers an order of proof problem; it is not designed to make something admissible that should be excluded.")). Instead, under the doctrine, other portions of conversations or other forms of correspondence are admissible if "necessary to correct a 'misleading impression' caused by the 'incomplete character' of the portion of the statement admitted […]." *Cosgrove*, 637 F.3d at 661 (quoting *Howard*, 216 Fed. Appx. at 472); *see Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 172 (1988) ("When one party has made use of a portion of a document, such that misunderstanding or distortion can be averted only

16

through presentation of another portion, the material required for completeness is ipso facto relevant and therefore admissible under Rules 401 and 402."); *see, e.g.*, *United States v. Gallagher*, 57 Fed. Appx. 622, 628-29 (6th Cir. 2003) (self-serving exculpatory statements were not required for completeness and were properly excluded as inadmissible hearsay); *United States v. Burreson*, 643 F.2d 1344, 1349 (9th Cir.), *cert. denied*, 454 U.S. 830 (1981) (holding no abuse of discretion in excluding part of a prior statement as irrelevant and inadmissible hearsay).

"Because neither the Constitution nor the rule of completeness requires admission of [the] entire statement once any portion is admitted in criminal prosecution, courts have required defendants to demonstrate with particularity any unfairness in selective admission of the prior […] statement." *United States v. Fisher*, 2008 U.S. Dist. LEXIS 50540, at *3 (E.D. Mich. July 1, 2008) (citing *United States v. Branch*, 91 F.3d 699 (5th Cir. 1999)). In determining whether the moving party has met its burden, courts often look to whether the omitted evidence is necessary to: (1) explain the excerpted portion; (2) place the excerpted portion in context; (3) avoid misleading the finder of fact; and (4) insure a fair and impartial understanding. *See United States v. Glover*, 101 F.3d 1183, 1190 (7th Cir. 1996), *reversed on other grounds*, 531 U.S. 198 (2001); *United States v. Soures*, 736 F.2d 87, 91 (3d Cir. 1984); *United States v. Marin*, 669 F.2d 73, 84 (2d Cir. 1982).

Given the clear limitations of the rule, the Court will not, as the defendants

request, enter a blanket order requiring all audio recording to be played in their entirety.[12]
*See Trepel,* 40 Fed. Appx. at 110 ("A district court is not obliged to admit the entire document under Rule 106."). It will, however, permit the immediate admission of any un-played portion of a wire communication, or other type of communication or correspondence, that is necessary to correct any "misleading impression" caused by the introduction of only part of the communication. In other words, the Court will follow the rule.

Because the defendants failed to identify in their motion any particular excerpts from the wiretaps that must be admitted under Rule 106, let along demonstrate why with particularity any unfairness would result if only a portion of any particular call is admitted, the Court granted the defendants leave to provide the transcripts of such calls and argument as to why the rule of completeness requires the playing of the call in its entirety or playing more than the government had intended to present. Following receipt of these submissions, the Court will further consider the defendants' motion. The Court, therefore, reserves ruling on this motion for now.

---

[12]Ironically enough, it is the defendants' selective use of language from various Opinions that illustrates the need for the rule of completeness. In their motion, defendants represent that "[a]ccording to the Rule of Completeness, evidence 'should be admitted in [it] entirety *or not at all*.'" (Mot. at 3.) The defendants cited to *United States v. Washington*, 12 F.3d 1128, 1137 (D.C. Cir. 1994), but the language they lifted from the decision did not represent the court's ruling, but rather was an argument raised by the government. While it is true that the court in *Washington* upheld the trial court's decision not to allow only a portion of the proffered statement into evidence without the remainder of the statement to provide context, the court's ruling did not stand for the cited proposition that the rule of completeness always requires the admission of all of a statement or recording or none at all. Similarly, the defendants lifted the following language from *United States v. Castro-Cabrera*, 534 F. Supp. 2d 1156, 1160 (C.D. Cal. 2008): "The Rule of Completeness warrants admission of [the evidence] in its entirety or not at all." (Mot. at 3.) Omitted from the beginning of the quoted sentence was the word "Here," and the words "statement (1)" were replaced with "the evidence." When placed in proper context, it is clear that these cases do not provide for a blanket rule requiring the admission of every portion of every statement or recording offered at trial but, instead, merely provided that the rule of completeness may dictate that a particular statement be offered in its entirety.

**Government's Motions in Limine (Doc. No. 110)**

        The government moves in limine to preclude the defendants from admitting self-serving out of court statements; to permit the admission of co-conspirator statements; and to disallow evidence and argument relating to irrelevant defenses.

        <u>Out-of-Court Statements</u>

        While Rule 801(d)(2) permits the introduction of a defendant's statements as non-hearsay admissions of a party opponent, "[t]he rules [of evidence] do not […] provide an exception for self-serving, exculpatory statements made by a party which are being sought for admission by that same party." *United States v. Wilkerson*, 84 F.3d 692, 696 (4th Cir. 1996); *see United States v. McDaniel*, 398 F.3d 540, 545 (6th Cir. 2005) (emphasis in original) ("Rule 802(d)(2) […] does not extend to a party's attempt to introduce his or her *own* statements through the testimony of other witnesses."). Further, while an admission need not have been against the party's interest at the time it was made, *see United States v. Rios Ruiz*, 579 F.2d 670, 676 (1st Cir. 1978) (quoting 4 Weinstein's Evidence § 801(d)(2)), "[a]n admission must be contrary to a party's position at trial." *Auto-Owners Insurance Co. v. Jensen*, 667 F.2d 714, 722 (8th Cir. 1981) ("An admission must be offered against a party, not for him."); *United States v. Phelps*, 572 F. Supp. 262, 265 (E.D. Ky. 1983). Because it would amount to inadmissible hearsay, not permitted by any exception to the hearsay rule, the defendants will not be permitted to offer self-serving out-of-court statements at trial under Rule 801(d)(2).

Such a ruling does not prevent the defendants from offering their out-of-court statements under other rules, or as something other than hearsay. *See, e.g., United States v. Kenney*, 218 Fed. Appx. 380, 384-385 (6th Cir. 2007) (defendant's out-of-court statement properly admitted as non-hearsay because it was not offered for its truth but to prove that it was said). Without knowing the nature of the statements or the context in which they might be offered, however, the Court cannot give an advance ruling on their admissibility under any other rule.

Admissibility of Co-Conspirators' Statements

The government also seeks to admit co-conspirator statements. The defendants oppose the motion, and have filed their own motion requesting a pretrial hearing on the admissibility of such statements. (Doc. No. 116.) In the event that the Court is not inclined to grant such a hearing, the defendants request that the government be compelled to make a proffer under *United States v. Vinson*, 606 F.2d 149 (6th Cir. 1979).

Rule 801(d)(2)(E) of the Federal Rules of Evidence permits the admission of statements made by co-conspirators provided the government can show by a preponderance of the evidence (1) that a conspiracy existed, (2) that the defendant against whom the statement is offered was a member of the conspiracy, and (3) that the statement was made during the course of and in furtherance of the conspiracy. *See Vinson*, 606 F.2d at 152. This preliminary finding is made by the trial judge, Fed. R. Evid. 104(a); *see also Vinson*, 606 F.2d at 152, and, with respect to this determination, the Court has

considerable discretion "in controlling the mode and order of proof […]." *Vinson*, 606 F.2d at 152.

There are several options available to the trial judge. First, the Court could conduct a "mini-hearing" outside the presence of the jury, where the Court receives proof of the conspiracy and makes a preliminary finding. *See United States v. Enright*, 579 F.2d 980, 986-87 (6th Cir. 1978); *Vinson*, 606 F.2d at 152. If Court finds that the statements are properly admitted as statements of co-conspirators, the evidence is presented to the jury. "While the Sixth Circuit has acknowledged that a trial judge has the discretion to order the proof in this manner, it has also recognized that 'this procedure has been criticized as burdensome, time-consuming, and uneconomic.'" *See United States v. Coffman*, 2010 U.S. Dist. LEXIS 104153, at *4 (E.D. Ky. Sept. 29, 2010) (quoting *Vinson*, 606 F.2d at 152).

Second, the court can "require the government to meet its initial burden by producing the non-hearsay evidence of conspiracy first prior to making the *Enright* finding concerning the hearsay's admissibility." *Vinson*, 606 F.2d at 152. This option "clearly avoids 'the danger […] of injecting the record with inadmissible hearsay in anticipation of proof of a conspiracy which never materializes." *Id.* at 152-53 (quoting *United States v. Macklin*, 573 F.2d 1046, 1049 n.3 (8th Cir.), *cert. denied*, 439 U.S. 852 (1978)).

A third, and final, option permits a trial court to conditionally "admit the hearsay statements subject to later demonstration of their admissibility by a preponderance of the evidence." *Vinson*, 606 F.2ds at 153. The danger in this option is that if the government fails to carry its burden as to the conspiracy, the trial court

"should, on the defendant's motion, declare a mistrial unless convinced that a cautionary jury instruction would shield the defendant from prejudice." *Vinson*, 606 F.2d at 153. Nonetheless, the Sixth Circuit has approved of this final approach, recognizing that it is "firmly entrenched in this circuit's practice." *United States v. Holloway*, 740 F.2d 1373, 1375 n.2 (6th Cir. 1984).

The defendants urge the Court to select the first option and conduct a "mini-hearing." According to defendants, only the "sterile environment" of a pre-trial hearing can eliminate the possibility that any convictions could be based on inadmissible hearsay. Defendants also insist that, even if the government is able to establish a conspiracy involving Phillips, it is not likely to establish McMichael's participation therein, and that the Court would be forced to continually give a cautionary instruction that such statements were only being offered as against defendant Phillips. The government advocates for the third option of conditionally admitting the hearsay statements subject to a later determination of their admissibility.

Given the inherent complexity of conspiracies, the Court finds that a full evidentiary hearing would be cumbersome and would unnecessarily add considerable length to the proceedings, as a whole. However, in light of the fact that the government has represented that the evidence of the conspiracy will consist almost exclusively of the recorded conversations of the defendants and other co-conspirators, and the inferences that may be drawn there from, the Court believes that the most prudent approach would be to select a hybrid of option two and three and require the government to proffer non-hearsay evidence of the conspiracy prior to admitting any of co-conspirator statements. The Court will afford the government an opportunity to provide such evidence, by way of

a proffer, following jury selection on December 2, 2011. The government should be prepared to proffer non-hearsay evidence of each defendant's involvement in the alleged conspiracy. If the Court finds sufficient evidence upon which a jury can find a conspiracy, the Court will then conditionally admit the hearsay statements subject to later determination of a conspiracy by a preponderance of the evidence.

Irrelevant Defenses

Finally, the government seeks to preclude the defendants from offering irrelevant defenses at trial. Specifically, it requests that the defendants be prohibited from offering evidence that bribery is a common practice in the awarding of public contracts.

"[T]he Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Holmes v. South Carolina,* 547 U.S. 319, 324 (2006) (quoting Crane v. Kentucky, 476 U.S. 683, 690 (1986)). Being allowed to present "relevant evidence is integral to that right." *Baze v. Parker*, 371 F.3d 310, 323 (6th Cir. 2004) (citing *Taylor v. Illinois*, 484 U.S. 400, 408-09 (1988)). A criminal defendant does not, however, "have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under the standard rules of evidence." *Taylor*, 484 U.S. at 410. The question becomes whether evidence that bribing public officials is a common practice is legally relevant and competent evidence.

"No custom is a justifiable defense for violation of the criminal code of the United States." *Burnett v. United States*, 222 F.2d 426, 427 (6th Cir. 1955) (upholding decision to exclude evidence that Army "custom" permitted the use of subordinates to build household items); *see also United States v. O'Grady*, 742 F.2d 682, 700 (2d Cir.

23

1984) (dissent) ("That such corruption may be widespread […] is no more an excuse barring prosecution under the Hobbs Act than was the prevalent dishonesty in Boss Tweed's day or the 'custom' followed for many years by American companies of giving money to officials of foreign governments with whom they did business."); *United States v. Private Sanitation Indus. Assn.*, 1997 U.S. Dist. LEXIS 16240, at *13 (E.D.N.Y. Sept. 30, 1997) ("Clearly the coercion and extortion defenses [to bribery charges] are not intended to permit defendants to break the law because 'everyone is doing it.'"); *United States v. Slapo*, 285 F. Supp. 513 (S.D.N.Y 1968) ("we have not yet reached the point, at least in this court's view, where an industry custom and practice serves to repeal criminal laws"). Based on this authority, the government argues that any defense that relied upon industry practice or custom that violated the law would be irrelevant and, thus, inadmissible.

At the motion hearing, counsel for defendant McMichael assured the Court and the government that his client had no intention of offering a "boys will be boys" defense, but suggested that evidence of custom or business practices may be relevant to show that defendant McMichael lacked the necessary intent to violate any criminal statutes, and cites to *United States v. Riley*, 550 F.2d 233 (5th Cir. 1977).[13] In *Riley*, the Fifth Circuit reversed a conviction in a case where the trial court had prohibited the defendant from offering evidence of custom and practice to show that he lacked the requisite intent to injure and defraud the bank. Rejecting cases like *Burnett*, which

---

[13] In his response to the government's in limine motion, defendant Phillips suggested, without support, that he should be allowed to offer any defense, including "everyone is doing it", and that the government can suggest in closing arguments that a "custom" defense should carry no weight.

prohibited such a defense, the court held that "[w]hile a general practice is not an absolute defense to criminality we think the wiser, and in this case mandated, approach is to let the jury consider the practice in determining whether Riley intended to insure and defraud the bank." *Id.* at 236; *but see United States v. Fawell*, 2003 U.S. Dist. LEXIS 11605, at *23 (N.D. Ill. July 9, 2003) (In a fraud case, the court excluded evidence of fundraising practices in other administrations, noting that "[w]hether the practice was common or uncommon, it was improper and the charged activities were unlawful. […T]he argument and evidence that 'everybody does it' or that witnesses did not know they were violating the law was no more relevant here than it would be in a drug distribution prosecution.").

    While the Court is skeptical that custom or practice is a proper foundation upon which to argue a lack of intent, or, more specifically, a lack of knowledge of the illegality of certain conduct, the Court will permit the defendants to offer such evidence. The government's motion to exclude such evidence is, therefore, denied. In so ruling, the Court puts the defendants on notice that such evidence *may* open the door to evidence relating to ethical rules promulgated by CMHA or Siemens, as they could provide some evidence that the defendants knew that such practices were unlawful. Of course, should the Court permit such rebuttal evidence, it will provide an appropriate limiting instruction. Moreover, the Court stresses that this is an in limine ruling and, like all in limine rulings, it is subject to change at trial.  Because the defendants did not educate the Court on what custom or practice evidence they might offer, nor did the government see fit to present the Court with copies of the ethical policies in question and the basis for

defendants' knowledge thereof, the Court cannot say definitively that such a defense would open the door.[14]

*Conclusion*

For all of the foregoing reasons, the government's motion in limine (Doc. No. 110) is granted in part and denied in part as set forth in this Opinion, defendants' joint motions to exclude other acts evidence (Doc. No. 112) and McMichael's motion to exclude evidence relating to Forlani and Doan Pyramid (Doc. No. 115) are denied as moot, defendants' joint motion to exclude uncharged ethical violations (Doc. No. 111) is granted, and defendant's joint motion to exclude uncharged intercepted calls (Doc. No. 113 and defendant McMichael's motion to exclude evidence of adult entertainment (Doc. No. 114) are denied. A ruling on the admissibility of co-conspirator statements (*see* Doc. No. 116) and the impact of the rule of completeness upon the recorded conversations to be played at trial (*see* Doc. No. 117) will be made on the record after the Court has had sufficient time to consider the parties' recent submissions regarding the statements and the government's *Vinson* proffer regarding the alleged conspiracy.

**IT IS SO ORDERED**.

Dated: December 2, 2011

_____
**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

---

[14] Furthermore, because the Court cannot evaluate the competing evidence of practice and ethics, it cannot make a determination under Rule 403 as to whether the potential probative value of evidence of the ethical policies is substantially outweighed by the likely prejudice to the defendants.

26