UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NOS.  1:11CR180 |
| | ) | 1:12CV2365 |
| | ) | |
| RESPONDENT, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | OPINION & ORDER |
| | ) | |
| GEORGE A. PHILLIPS, | ) | |
| | ) | |
| PETITIONER. | ) | |

This matter is before the Court on the motion of *pro se* petitioner George Phillips to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255. (Doc. No. 190.) The government has filed an opposition to the motion. (Doc. No. 192.) Though afforded an opportunity to do so, petitioner did not file a reply. (*See* Scheduling Order, Doc. No. 191.) For the reasons that follow, petitioner's motion is denied.

*Background*

On April 27, 2011, an indictment was returned charging petitioner and a second defendant, Michael McMichael, with one count each of conspiracy to commit bribery concerning programs receiving federal funds, Hobbs Act extortion, and conspiracy to commit wire fraud and honest services wire fraud. Petitioner was also charged with an additional count of conspiracy to commit bribery concerning programs receiving federal funds, and one count of making false statements to law enforcement, in violation of 18 U.S.C. § 1001. (Indictment, Doc. No. 1.)

The indictment was one of a number of indictments that were returned as a result of an FBI probe into public corruption in Cuyahoga County, Ohio. At all times relevant to the indictment, petitioner was the executive director of the Cuyahoga County Metropolitan Housing Authority ("CMHA"). The fraud counts were premised on the theory that petitioner received things of value—including golf outings, tickets to sporting events, and an air conditioning system for his home—in exchange for performing official acts as the head of CMHA. The § 1001 charge related to petitioner's October 15, 2008 interview with FBI agents that was conducted at the time the FBI searched petitioner's home. It was alleged that during the interview petitioner advised agents that he did not receive a ticket to a golf tournament from co-conspirator, William Neiheiser, and that he paid for the air conditioning unit placed in his home, knowing that both of these statements were false.

On December 14, 2011, after an eight day jury trial conducted by this Court and two days of deliberations, the jury returned its verdicts. Co-defendant McMichael was acquitted of all charges, and petitioner was acquitted of all but the charge of making false statements to law enforcement. (Verdicts, Doc. No. 158.) On April 4, 2012, the Court sentenced petitioner on the § 1001 conviction to a term of imprisonment of 10 months, to be followed by a one-year term of supervised release.

Petitioner did not take an appeal from the Court's judgment of conviction and sentence. Instead, more than five months after sentence was imposed, petitioner filed the present § 2255 motion. In his application, he claims that: (1) the search warrant issued was based on false and misleading information; (2) his conviction for making false statements was premised on conduct for which he was acquitted; (3) he was never

advised of his rights before he was interviewed by the FBI; and (4) his sentence was enhanced by false statements and information. (Doc. No. 190.)

*Law and Discussion*

Before reaching the merits of petitioner's application, the Court must address the government's contention that petitioner has procedurally defaulted on the asserted claims. In order to prevail on a motion brought under 28 U.S.C. § 2255, a petitioner must show a "fundamental defect which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Gall v. United States*, 21 F.3d 107, 109 (6th Cir. 1994) (citing *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990)). It is not a substitute for a direct appeal. When a petitioner raises a claim that he failed to raise at the appellate level, a court is generally precluded from reviewing the merits of such a claim unless the petitioner can show: (1) cause for his failure to raise the claim earlier in a direct appeal; and (2) actual prejudice stemming from the alleged violation of actual innocence. *Reed v. Farley*, 512 U.S. 339, 354-55 (1984); *United States v. Frady*, 456 U.S. 152, 167-68 (1981). To demonstrate "cause" for a procedural default, a petitioner must show "some objective factor external to the defense" kept him from raising the issue earlier. *Coleman v. Thompson*, 501 U.S. 722, 753 (1991) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).

The ineffective assistance of counsel can constitute cause sufficient to excuse a procedural default. *Ratliff v. United States*, 999 F.2d 1023, 1026 (6th Cir. 1993) (citing *Murray*, 477 U.S. at 488); *see also Massaro v. United States*, 538 U.S. 500, 504 (2003) (Ineffective assistance of counsel claims "may be brought in a collateral

3

proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal.") To establish the ineffective assistance of counsel in failing to raise an issue on appeal, a petitioner must show that "counsel's performance was deficient and that the deficient performance was prejudicial." *Ratliff,* 999 F.2d at 1026 (citing, among certain authority, *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

Petitioner fails to offer any factual allegations that would support a finding of cause and actual prejudice to overcome the procedural default of his claims. Additionally, petitioner does not raise ineffective assistance of counsel in connection with his failure to take a direct appeal, or with respect to any of his assignments of error. The only mention of his prior counsel's involvement in the case comes in response to a question appearing on the pre-printed form used by inmates to request § 2255 relief. In response to the question following the recitation of each ground for relief—"If you did not raise this issue in your direct appeal, explain why"—petitioner wrote "I followed the advice of my attorney and filed no appeal." (*See* Petition at 5-7, 9, Doc. No. 190 at 2529-2531, 2533; *see also* Petition at 4, Doc. No. 190 at 2528.) Even affording the application a liberal interpretation that is appropriate for *pro se* pleadings, *see Williams v. Browman*, 981 F.2d 901, 903 (6th Cir. 1992), the Court cannot find that this one stark statement sufficiently raises ineffective assistance of counsel as an excuse for petitioner's procedural default. *See Elzy v. United States*, 205 F.3d 882, 886 (6th Cir. 2000) (petitioner's conclusory statement in response to questions on the pre-printed § 2255

4

form were insufficient to raise the issue of counsel's effectiveness).[1]

Notably, petitioner did not allege that he requested that his counsel file an appeal, and that his counsel failed to do so. *Compare Regalado v. United States*, 334 F.3d 520, 525 (6th Cir. 2003) (quoting *Rodriquez v. United States*, 395 U.S. 327 (1969) and citing additional authority for the proposition that "it is 'professionally unreasonable' for a lawyer to fail to file an appeal when specifically instructed to do so")); *see United States v. Hodge*, 554 F.3d 372, 379 (3d Cir. 2009). Similarly, petitioner did not suggest that his counsel failed to consult with him regarding his right to file an appeal, or that the consultation that he did receive was inadequate. *See Regalado*, 334 F.3d at 525 (discussing the sufficiency of attorney consultation). Rather, he concedes that counsel did consult with him, and he failed to set forth even a single factual allegation from which this Court could determine that petitioner did not concur in the decision to forego a direct appeal.[2] His claims are, therefore, procedurally barred.

---

[1] In *Elzy*, the court noted that the petitioner was represented by counsel during the § 2255 proceedings. Relying on *Elzy*, however, courts have applied the same rationale to *pro se* pleadings where the allegation of ineffective assistance is conclusory in nature. *See, e.g., United States v. Lundy*, No. 6:08-CR-02-DCR, No. 6:11-CV-7168-DCR-REW, 2012 U.S. Dist. LEXIS 39553, at *20 (E.D. Ky. Feb. 27, 2012), *adopted by* 2012 U.S. Dist. LEXIS 36782; *Cartwright v. United States*, 1:08-cv-103, 1:04-cr-33, 2011 U.S. Dist. LEXIS 138714, at *13-*14 (E.D. Tenn. Dec. 1, 2011). It is worth noting that in *Lundy* and *Cartwright*, the courts were presented with statements, though conclusory, that were substantially closer to raising the issue of counsel's effectiveness than those offered in the present case.

[2] For these same reasons, petitioner is not entitled to an evidentiary hearing. In an action to vacate or correct the sentence, a court is required to grant a hearing to determine the issues and make findings of fact and conclusions of law "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief . . . ." 28 U.S.C. § 2255(b). However, "no hearing is required if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (quoting *Arrendondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)). Where, as here, the judge considering the § 2255 motion also conducted the trial, the judge may rely on his or her own recollections of the trial. *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996). As previously discussed and will be shown below, petitioner's claims are contradicted by the record and the applicable law, and/or are based on conclusions rather than statements of fact.

Even if the Court were to reach the merits of the asserted claims, petitioner would not be entitled to the relief he seeks. Petitioner's first and third claimed errors—that the search warrant was based on false and misleading information and that petitioner was interrogated without the benefit of his *Miranda* rights—touch upon Fourth Amendment concerns. Rule 12(b)(3)(C) of the Federal Rules of Criminal Procedure requires that "a motion to suppress evidence" be made prior to trial. Fed. R. Crim. P. 12(b)(3)(C). Rule 12(c) gives the Court the right to set a deadline for filing pretrial motions. Fed. R. Crim. P. 12(c). "A party waives any Rule 12(b)(3) defense, objection, or request not raised by the deadline the court sets under Rule 12(c) or by any extension the court provides." Fed. R. Crim. P. 12(e). The Court may grant relief from such a waiver, but only for good cause shown. Fed. R. Crim. P. 12(e).

On July 15, 2011, the Court issued an amended trial order which, among other things, provided for the filing of pre-trial motions by September 23, 2011. Notwithstanding the opportunity to do so, petitioner did not move prior to trial to suppress either the statements he made to law enforcement or the evidence obtained by federal agents during the search of his home. In the present petition, he fails to offer any explanation for the failure to file such a motion. *See United States v. Walden*, 625 F.3d 961, 965 (6th Cir. 2010) (Good cause under Rule 12(e) to excuse the failure to timely file a motion to suppress "requires the party seeking a waiver to articulate some legitimate explanation for the failure to timely file.") As such, he has waived any perceived error as to the search of his home, and the failure of agents to advise him of his *Miranda* rights

6

prior to conducting the interview.³ *See United States v. Collier*, No. 06-5354, 246 Fed. App'x 321, 336 (6th Cir. 2007) (noting that "Rule 12(e) expressly provides that a party 'waives' evidentiary objections not timely raised").

In his second claimed error, petitioner insists that his § 1001 conviction was based upon conduct for which he was acquitted. Petitioner misunderstands the nature of § 1001. To secure a conviction for making false statements to law enforcement, under 18 U.S.C. § 1001, the government must prove: "(1) the making of a statement; (2) the falsity of such statement; (3) knowledge of the falsity of such statement; (4) relevance of such statement to the functioning of a federal department or agency; and (5) that the false statement was material." *United States v. Gatewood*, 173 F.3d 983, 986 (6th Cir. 1999) (quoting *United States v. Hixon*, 987 F.2d 1261, 1266 (6th Cir. 1993)); *see* Sixth Circuit Pattern Criminal Jury Instructions 13.02. It is not necessary to prove, as petitioner suggests, that the false statements were made for the purpose of concealing other crimes. *See, generally, United States v. LeMaster*, 54 F.3d 1224, 1232 (6th Cir. 1995) (applying U.S. Sentencing Guideline §5K2.9, and noting that "[c]ommonly, violations of § 1001 are motivated by purposes other than the concealment of other crimes").

Petitioner also suggests that his conviction for making false statements cannot stand because the statements he made to the FBI were true. He explains:

---

³ The third assignment of error fails for the additional reason that the uncontroverted record clearly demonstrates that petitioner was not in custody when he was interviewed by the FBI. At trial, Special Agent Michael Massie's uncontradicted testimony established that petitioner voluntarily invited federal agents into his home, and that they never presented him with an arrest warrant. (Trial Transcript at 228, Doc. No. 161 at 1060.) Inasmuch as petitioner was not in custody, agents were not required to advise him of his rights before questioning him. *See Miranda v. Arizona*, 384 U.S. 436, 477 (1966) (holding that an individual need only be advised of his constitutional rights to counsel and to refuse to speak with law enforcement during custodial interrogation); *see, e.g., United States v. Bevelle*, Nos. 08-1925, 08-1927, 437 Fed. App'x 399, 407 (6th Cir. 2011) (no *Miranda* violation where the petitioner was not under arrest at his own home).

> Trial transcripts show that while my initial statement was that I paid for the [air conditioning] system, during questioning I correctly stated I was paying for the system, and had yet to be billed. My initial statement was said to counter [the agents'] suggestion of this system [sic] installed for personal gain. That was never the intent or the case.

(Petition at 6, Doc. No. 190 at 2530.)

Petitioner's argument is essentially that, under some interpretation of the questions posed and the answers given, his answers were true. However, "the possibility that a defendant 'can postulate unstated premises of the question that would make his answer literally true' does not bar the possibility of liability." *See United States v. Ahmed*, 472 F.3d 427, 432 (6th Cir. 2006). A defendant's understanding of the questions posed, and the resulting intent behind the answers given, are questions for the jury. *See United States v. Damrah*, 412 F.3d 618, 626 (6th Cir. 2005). The jury decided these questions against petitioner, after receiving appropriate instructions addressing the issue of intent, and petitioner fails to identify any justification for disturbing the verdict.[4]

In his fourth and final ground for relief, petitioner argues that the Court enhanced his sentence by relying upon false statements and information. He notes that, during the sentencing hearing, the government raised the fact that he failed to disclose his disciplinary hearing in Chicago to the CMHA in Cleveland during the application process. The prior discipline involved an incident wherein petitioner instructed a Chicago

---

[4] To the extent that petitioner is arguing that he corrected an earlier misstatement by explaining that he expected to pay for the air conditioning unit but had yet to be billed after he was confronted with evidence that the unit was a bribe, the argument is equally unavailing. An initial final statement is sufficient to incur criminal liability under § 1001, even if the interviewee eventually recants inasmuch as there is no safe harbor for recantation or correction of a prior false statement under § 1001. *See United States v. Beaver*, 515 F.3d 730, 742 (7th Cir. 2008) (section 1001 contains no recantation defense; "the materiality of [an accused's] false statements must be assessed at the moment he uttered them."); *United States v. Stewart*, 433 F.3d 273, 318 (2d Cir. 2006) (Section 1001 does not have a safe harbor for subsequent recantation); *United States v. Sebaggala*, 256 F.3d 59, 64 (1st Cir. 2001) (same).

8

Housing Authority employee to go to his home to remove a tree. When this activity came to light, petitioner denied that it occurred, and was subsequently demoted.

The present application does not challenge the Court's consideration of this prior incident in calculating his sentence. Rather, petitioner takes issue with the government's suggestion at sentencing that the prior incident was not disclosed when he applied for the Cleveland position. He explains that "[t]he application [for the job at CMHA] was completely filled out. That information was disclosed to both the Board Chairman and attorney prior to my hire." (Petition at 9, Doc. No. 190 at 2533.) He further complains that this prior incident does not demonstrate a pattern of dishonesty, noting that it was an "administrative matter, not a court case." (*Id.*)

The record is clear that the Court, after entertaining argument from defense counsel, did not consider petitioner's alleged nondisclosure of the prior discipline in calculating the sentence. (Hearing Transcript at 37, Doc. No. 187 at 2494.) It did, however, consider the undisputed fact that petitioner "used or misappropriated" public personnel to do work at his private residence, and that he was not truthful when investigators questioned him. The Court properly found that these undisputed facts demonstrated that the crimes for which he was convicted in this case did not represent

9

aberrant behavior, thereby declining petitioner's request to apply a downward departure pursuant to §5K2.20 of the guidelines.[5] (*Id.* at 47, Doc. No. 187 at 2504.)

The Court also declined to apply an upward departure, requested by the government, based upon §5K2.9 of the guidelines. (Hearing Transcript at 47-48, Doc. No. 176 at 2504-05.) Instead, the Court found that a three-level upward variance was warranted because petitioner was a public official who provided "false statements to the FBI agents during this one-time interview because at the interview he was given a number of opportunities to truthfully respond to the agents' questions yet he failed to do so initially."[6] (*Id.* at 48, 52-56, Doc. No. 187 at 2505, 2509-2513.)[7] Petitioner's complaints with respect to the nature of his enhanced sentence find no basis of fact in the record, and are without merit.

---

[5] Defense counsel also took exception to the representation in the PSR that petitioner promised the Chicago housing authority employee a promotion if he cut down the tree in petitioner's yard. (Hearing Transcript at 38-40, Doc. No. 187 at 2495-2497.) The record shows both that the Court did not consider this aspect of the alleged prior incident in arriving at its sentence, and that defense counsel indicated that he was satisfied with this result. (*Id.* at 40, Doc. No. 187 at 2497.)

[6] The Court went on to note that "[i]t was only after the agents indicated they didn't believe that he was being truthful that he began to retract and revise and even then did not make full disclosure of the facts." (*Id.* at 48, Doc. No. 187 at 2505.)

[7] While the Court did not rely on the acquitted bribery conduct, the Court also noted that there was sufficient evidence to find by a preponderance of the evidence that petitioner lied to the FBI in order to conceal his receipt of things of value in exchange for his official acts. (*Id.* at 55, Doc. No. 187 at 2512.) *See, e.g., LeMaster*, 54 F.3d at 1232 (citations and quotations omitted) (relying on acquitted bribery conduct to enhance a conviction under § 1001, noting that "an acquittal does not require the court to ignore otherwise relevant conduct, and it is sufficient if the offense being concealed is established only by a preponderance of the evidence").

10

*Conclusion*

None of the grounds asserted by petitioner in his application support relief pursuant to 28 U.S.C. § 2255. Accordingly, the Court denies his motion to vacate or set aside the judgment of conviction and sentence. The Court further certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

**IT IS SO ORDERED**.

Dated: January 31, 2013

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**